UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JOHN DOE, | : |
|     Plaintiff, | : CIVIL NO. 3:18-mc-00037 (VAB) |
| V. | : |
| THE HOTCHKISS SCHOOL, | : |
|     Defendant. | : APRIL 13, 2018 |

**REPLY BRIEF IN SUPPORT OF MOTION
TO QUASH THIRD-PARTY SUBPOENA**

Plaintiff seeks disclosure of confidential private communications solicited and received by attorneys hired by The Hotchkiss School's general counsel to conduct an investigation of allegations of past misconduct at the school. In claiming that these communications are discoverable, Plaintiff mischaracterizes the facts and ignores the applicable legal standard. Indeed, Plaintiff ignores the factors considered by the District of Connecticut (*Margolis, J.*) in *Buck v. Indian Mountain School, Inc.*, 2017 U.S. Dist. LEXIS 13348 (D. Conn. Jan. 31, 2017), and by the Seventh Circuit in *Sandra T.E. v. South Berwyn School District 100*, 600 F.3d 612, 622 (7th Cir. 2009). Instead, Plaintiff erroneously argues:

- That Carlton Field's role was that of a mere fact finder, when the law firm was actually selected for its specific expertise in conducting independent investigations of alleged misconduct at educational institutions;

- That a statement attributed to Attorney James Sconzo establishes that Carlton Field's investigation was not protected by the attorney-client privilege, (Opp. Br. at 4), even though it is clear that the law firm was retained through Hotchkiss' outside general counsel;

- That Hotchkiss' claim of privilege is too broad, notwithstanding the fact that Hotchkiss is responding only to Plaintiff's subpoena, which Plaintiff deems "narrowly crafted," (*see* Opp. Br. at 20); and

- That Hotchkiss waived any privilege by not producing a privilege log, even though Hotchkiss had no access to the privileged communications and, therefore, could not have logged them.

Plaintiff's subpoena seeks to disrupt an ongoing, confidential investigation into particularly sensitive issues. The former students and faculty who provided information to the investigating attorneys were promised that their statements and identities would remain confidential and private. Disclosure of this information would not only prejudice Hotchkiss, it would also violate the privacy of those who voluntarily participated in the investigation. Accordingly, Plaintiff's third-party subpoena should be quashed because it seeks information protected by the attorney-client privilege and disclosure would undermine the important policy underlying confidentiality in this case.

## I.     PLAINTIFF IGNORES THE APPLICABLE LEGAL STANDARD

Plaintiff does not acknowledge the well-established principle that the attorney-client privilege protects "not only the giving of professional advice . . . but also the giving of information to the lawyer to enable him to give sound and informed advice." *Upjohn Co. v. United States,* 449 U.S. 383, 390 (1980). More critically, Plaintiff fails to address the cases primarily relied upon in Hotchkiss' motion. (*See* Mem. of Law at 5-10.) Both *Sandra T.E.* and *Buck* addressed the precise issue presented by this motion: whether communications made to an attorney conducting an independent investigation for a school were protected by the attorney-client privilege. In both cases, a school engaged a law firm to conduct an independent investigation to determine the extent and validity of allegations of misconduct and to assist in preparing a response. *Sandra T.E.,* 600 F.3d at 615; *Buck,* 2017 U.S. Dist. LEXIS 13348, at *10-11. In both cases, the courts considered various factors to determine whether the investigating attorneys were acting *as attorneys* during the investigation, thereby invoking the attorney-client privilege. Judge Margolis, adopting the factors identified by the Seventh Circuit, found it

2

particularly relevant that (1) the law firm was identified to the community as attorneys, (2) the lawyers identified themselves as attorneys at the outset of each interview, (3) the interviews were conducted confidentially and in private, and (4) the law firm was retained to investigate in order for the school to respond to the allegations. In both cases, the courts concluded that the communications were privileged and not subject to disclosure.

In ignoring both cases and the factors that the courts discussed, Plaintiff appears to concede that (1) Carlton Fields was retained by Hotchkiss' general counsel, Wiggin & Dana, to conduct an investigation into allegations of misconduct at Hotchkiss <u>after</u> this litigation was commenced, (2) Carlton Fields was identified to the Hotchkiss community as a law firm "with extensive experience conducting investigations for educational institutions," (3) during each interview, the attorneys engaged in the investigation would identify themselves as attorneys engaged by Hotchkiss, (4) the interviews were conducted privately and notes of the interviews were not shared with any third-party, and (5) Carlton Fields was engaged to report its conclusions to Hotchkiss and its outside general counsel, Wiggin & Dana, without disclosing the confidential information it had received. *See* Affidavit of James Sconzo, ¶¶ 4-5, 8, 11; *see also* Ex. B to Mem. of Law (Hotchkiss community messages). Both *Sandra T.E.* and *Buck* demonstrate that these factors determine whether the communications are subject to the attorney-client privilege, even when ignored by Plaintiff. Application of these factors to this case establishes that Attorney Sconzo and his colleagues were acting as attorneys when they engaged in the investigative process. The communications they received in the investigation are, therefore, subject to the attorney-client privilege and should not be subject to discovery.

## II. THE STATEMENT ATTRIBUTED TO ATTORNEY SCONZO DOES NOT NEGATE THE ATTORNEY-CLIENT RELATIONSHIP

In an effort to sidestep the factors applied in *Sandra T.E.* and *Buck*, Plaintiff mischaracterizes a single statement attributed to Attorney Sconzo an unnamed Hotchkiss alumni. This former student claims that Attorney Sconzo told him during an interview that he did not have "any agenda other than to objectively investigate reports of misconduct. We do not represent Hotchkiss. We act with independent discretion."[1] Even crediting the accuracy of this alleged statement, it proves far less than Plaintiff claims.

The statement attributed to Attorney Sconzo articulates the independence of the investigation from oversight and direction by Hotchkiss. The statement also recites its confidential nature. Both characteristics of the Carlton Fields investigation for Hotchkiss are fully consistent with the application of the attorney-client privilege under *Sandra T.E.* and *Buck*. The alleged statement that he did not represent Hotchkiss simply articulates the fact that Carlton Fields was retained by Wiggin & Dana and that, under the terms of their representation, they would not share the details of any interview with Hotchkiss.

Moreover, even if the Court were to conclude that Carlton Fields did not have an attorney-client relationship with Hotchkiss (which it did), Wiggin & Dana certainly had and continues to have an attorney-client relationship with Hotchkiss as its general counsel. *See* Sconzo Aff., ¶ 4. The engagement letter makes clear that Carlton Fields was engaged to conduct the investigation and, in doing so, would be "acting for Wiggin & Dana in rendition of [their] legal services." *See* Ex. A to Mem. of Law. Accordingly, communications received in the

---

[1] Ironically, Plaintiff claims that no confidentiality exists with respect to communications received by Carlton Fields while simultaneously attesting that the affidavit of the former student should be sealed to protect the confidentiality of that person's information. Plaintiff's motion to seal the former student's affidavit undermines his attempt to publicize the information provided by that student and any other individuals to Carlton Fields.

investigation would also be protected under Wiggin & Dana's attorney-client relationship with Hotchkiss, as the information was necessary for it to provide legal advice to Hotchkiss.

This rationale is no different than other situations where attorneys hire experts to engage in fact-finding. *See Upjohn,* 449 U.S. at 391 (1981) ("The first step in the resolution of any legal problem is ascertaining the factual background and sifting through the facts with an eye to the legally relevant."). For instance, in *In re Woolworth Corp. Secs. Class Action Litig.*, 1996 U.S. Dist. LEXIS 7773, at *3-4 (S.D.N.Y. June 6, 1996), the district court held that that internal notes and memoranda from an investigation conducted by an accounting firm for a law firm were covered by the attorney-client privilege under *Upjohn*. Similarly, in *Export-Import Bank of the United States* v. *Asia Pulp & Paper Co., Ltd.*, 232 F.R.D. 103, 113 (S.D.N.Y. 2005), the court held that financial advisor communications were privileged because "the financial advisor's role [was] limited to helping lawyer give effective advice." Here, Carlton Fields was hired to conduct the investigation because of its specialized experience. The investigation was conducted in concert with Wiggin & Dana's provision of legal services to Hotchkiss. *See* Engagement Letter (Ex. A to Memo. of Law). Thus, even if Carlton Fields had no attorney-client relationship with Hotchkiss, the communications would also be protected by the attorney-client relationship between Wiggin & Dana and Hotchkiss.

### III. HOTCHKISS' HAS NOT ASSERTED A "BLANKET" PRIVILEGE CLAIM

Plaintiff argues that Hotchkiss' motion should be denied because it is a "blanket assertion[] of privilege." Opp. Br. at 10. Hotchkiss does object to the entirety of Plaintiff's subpoena. But the subpoena itself is narrow, seeking only "communications, statements or information received in connection with the independent investigation." *See* Subpoena (Ex. D to Mem. of Law). Indeed, Plaintiff's own opposition brief describes this request as "narrowly

crafted." Opp. at 20. When a subpoena is objectionable in its entirety, as it is here, a blanket assertion is entirely appropriate.

Contrary to Plaintiff's argument, the cases cited by Hotchkiss involve requests for the exact same type of information. In *Sandra T.E.*, the information sought was "handwritten notes and later drafted memoranda summarizing the interviews" from an independent investigation. 600 F.3d at 615. In *Buck*, the plaintiff sought "written statements by [school] alumni solicited in the course of an investigation conducted by Shipman & Goodwin," "notes by . . . counsel of conversations/interviews with Alumni" and "email communications between Alumni . . . and counsel in response to general communications to Alumni." *See* 2017 U.S. Dist. LEXIS 13348 at *4-5. These cases both involved the same type of information sought by Plaintiff's subpoena. Hotchkiss has objected to production of the same type of information that *Sandra T.E.* and *Buck* found to be privileged. The fact that the schools in those cases had produced other information does not render the objection to production of privileged communications invalid.[2] It makes no difference that Hotchkiss objected to the entirety of Plaintiff's request, when the narrow request sought privileged and confidential communications.

## IV. HOTCHKISS DID NOT WAIVE ITS PRIVILEGE BY NOT PRODUCING A PRIVILEGE LOG FOR DOCUMENTS IT DOES NOT POSSESS

Plaintiff claims that Hotchkiss waived its privilege by failing to provide a privilege log. Plaintiff's argument ignores the fact that Hotchkiss has never possessed or reviewed the communications in question. The Carlton Fields investigation was designed to be independent and was conducted in that manner. Sconzo Aff., ¶ 4. Hotchkiss did not direct or supervise the investigation. Only the general results of the investigation from the investigatory interviews would be reported to Hotchkiss and its counsel. *Id.*, ¶ 10-12. Hotchkiss has not received and ***will***

---

[2] Indeed, as with the schools in *Sandra T.E.* and *Buck*, Hotchkiss has already produced thousands of pages of materials to Plaintiff in this case.

***never receive*** the specific communications made by individuals who participated in the investigation. Therefore, Hotchkiss could not prepare a privilege log in this instance.

Further, Plaintiff mistakenly asserts that "the schools in the cases Hotchkiss relies on all produced a privilege log." *See* Opp. Br. at 9. The Seventh Circuit rejected the same argument in *Sandra T.E.* 600 F.3d at 623. The court held that the school had not waived privilege because "the focus of this dispute, however, [was] not on documents in *defendants'* possession but documents in [*the law firm's*] possession . . . ." *Id.*

The remaining waiver cases cited by Plaintiff are also inapplicable, as each involved the failure to provide a privilege log for documents in the parties' possession. In *Breon v. Coca-Cola Bottling Co.*, the defendant refused to include a privilege log in response to a request for production of documents in its possession. 232 F.R.D. 49, 53-54 (D. Conn. 2005). In *Feacher v. Intercontinental Hotels Group*, the court held that the defendant has waived privilege by failing to include a document on the privilege log that was "within their possession." No. 3:06-CV-0877, 2007 U.S. Dist. LEXIS 78262, at *20 (N.D.N.Y. Oct. 22, 2007). Finally, in *Rao v. Bd. of Trustees*, the court held that the defendant waived privilege by not producing a privilege log for investigative files it chose not to review. No. 14-cv-0066, 2016 U.S. Dist. LEXIS 145298, at *22 (N.D. Ill. Oct. 20, 2016). Unlike the defendants in each of these cases, Hotchkiss never possessed any of the communications sought in Plaintiff's subpoena.

Moreover, the purpose of the privilege log is to provide the Court with a basis by which to determine whether or not a document is privileged. Attorney Sconzo has already provided a description of the communications sufficient to establish the application of the privilege. If the Court concludes that it is necessary to review the documents, Carlton Fields can produce the documents to the Court for an *in camera* review. Judge Margolis followed this process in the

*Buck* case. 2017 U.S. Dist. LEXIS 13348 at *1-2 (during telephone discovery conference, court ordered law firm to produce disputed documents for *in camera* review). *In camera* review would allow the Court to review the communications while maintaining the confidentiality promised to those who participated in the investigation.

## V. CARLTON FIELDS' DOCUMENTS AND MEMORANDA ARE PROTECTED BY THE ATTORNEY WORK PRODUCT DOCTRINE

Plaintiff claims that the interview notes and memoranda prepared by Carlton Fields are not protected by the work product doctrine. Again, this argument ignores the holdings of *Sandra T.E.* and *Buck*.

In *Buck*, a private school was sued by several former students who claimed to have been abused while attending the school. *Id.* at *3. The school hired a law firm to "conduct a complete investigation and to report back to the Board regarding what happened, and how best to respect and support any alumni who may have been harmed." *Id.* The court held that the lawyers' notes and memoranda were protected by the work product doctrine because the law firm had been hired to "develop . . . [a] response to the claims of sexual abuse." It did not matter that the school had hired different litigation counsel and it did not matter that the scope of the investigation was broader than the allegations of abuse raised in the pending litigation. *Id.* at *22-23.

In *Sandra T.E.*, a private school engaged in an independent investigation after allegations arose that a music teacher had abused "numerous students over a period of years." 600 F.3d at 615. The school retained the law firm to investigate all potential sexual misconduct, even though only some of the alleged victims had filed suit. *Id.* The court held that the work product doctrine applied because an "articulable claim . . . has arisen." *Id.* at 622. Moreover, even though the investigation was also designed to "quell public outrage and prevent similar occurrences in the

future," that "does not remove the investigation from the protection of the work product doctrine." *Id.*

Similarly here, Hotchkiss, through its general counsel, retained Carlton Fields to investigate whether sexual abuse had occurred at Hotchkiss in order to respond to the allegations, to support alumni who may have been harmed, and to ensure that such abuse was prevented in the future. This case presents the exact same issue raised in *Buck* and *Sandra T.E.* Plaintiff has not provided any basis for departing from these well-reasoned decisions.

Plaintiff erroneously argues that the privilege protects only work product prepared in anticipation of the present litigation. As stated by the Seventh Circuit, "[w]ork product protection applies to attorney-led investigations when the documents at issue 'can fairly be said to have been prepared or obtained because of the prospect of litigation." *Sandra T.E.*, 600 F.3d at 622 (emphasis added). The privilege applies when "some articulable claim, *likely* to lead to litigation, has arisen." *Id.* Thus, the privilege is not limited in its application to litigation anticipated at the time the work product was prepared. Rather, the privilege applies to any litigation anticipated at the time the work product was prepared. When Carlton Fields was retained to start its investigation, Plaintiff had filed suit. It was incumbent upon Hotchkiss to investigate whether any other such claims existed and could be raised in future litigation.

Further, Plaintiff has not established any "substantial need" for the information. The only "need" cited in his opposition brief is that "prior reports of sexual abuse by Roy Smith is critical evidence for proving what Hotchkiss knew and when." *See* Opp. Br. at 16. This argument makes no sense, given that Roy Smith was beyond the scope of the Carlton Fields investigation. Sconzo Aff., ¶ 7. Moreover, Plaintiff has already established in discovery that Hotchkiss received no reports of sexual abuse by Roy Smith until Plaintiff's counsel contacted the school in 2014. No

basis exists to sidestep the work-product privilege. Therefore, the motion to quash should be granted.

## VI. THE SUBPOENA UNDERMINES HOTCHKISS' ABILITY TO COMPLETE THE INDEPENDENT INVESTIGATION

Finally, Plaintiff baldly asserts that Hotchkiss' investigation was a "sham" and that the self-evaluation privilege does not apply merely because the investigation did not encompass Plaintiff's specific allegations of sexual abuse. Opp. Br. at 17-19. No useful purpose would be served by having multiple sets of lawyers evaluate Plaintiff's claims in this case. Directing inquiries related to the litigation to litigation counsel in no way buries or discourages reporting of other misconduct. The scope of the information gathered by Carlton Fields disproves the Plaintiff's self-serving contention.

Further, Plaintiff's argument, and his subpoena in general, ignores the primary purpose of the self-evaluation privilege: to avoid punishing an organization for engaging in a critical and confidential analysis of its own problems. *See In re Ashanti*, 213 F.R.D. 102, 104 (E.D.N.Y. 2003). Giving Plaintiff confidential statements would break the promises of confidentiality made by Carlton Field and Hotchkiss to witnesses and to the school's entire community. Giving Plaintiff these statements would punish the school for ascertaining whether misconduct had occurred and for providing support to persons effected. The steps taken by Hotchkiss are fully consistent with the self-evaluation privilege. Therefore, the motion to quash should be granted.

DEFENDANT,
THE HOTCHKISS SCHOOL

*/s/ Jeffrey J. White*
Jeffrey J. White
Bradford S. Babbitt
Kathleen E. Dion
Robinson & Cole LLP
280 Trumbull Street
Hartford, CT 06103-3597
Tel. No.: (860) 275-8200
Fax No.: (860) 275-8299
E-mail: *jwhite@rc.com*; *bbabbit@rc.com*; *kdion@rc.com*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on April 13, 2018, a true and correct copy of the foregoing was served electronically on the following counsel of record:

Glenn A. Duhl, Esq.
Hugh W. Cuthberson, Esq.
Zangari Cohn Cuthbertson Duhl & Grello P.C.
59 Elm Street, Suite 400
New Haven, CT 06510
gduhl@zcclawfirm.com
hcuthbertson@zcclawfirm.com

Annika K. Martin, Esq.
Steven E. Fineman, Esq.
Wendy R. Fleishman, Esq.
Lieff Cabraser Heimann & Berstein, LLP
250 Hudson Street, 8th Floor
New York, NY 10013
akmartin@lchb.com
sfineman@lchb.com
wfleishman@lchb.com

/s/  Jeffrey J. White
Jeffrey J. White